AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone:  510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
JAYCE YEH

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYCE YEH<br><br>         Plaintiff,<br><br>    v.<br><br>PROCTORU, INC. dba MEAZURE LEARNING, INC.; CENTER FOR THE ASSESSMENT OF SIGN LANGUAGE INTERPRETATION, LLC, a Virginia Limited Liability Company; REGISTRY OF INTERPRETERS FOR THE DEAF, INC., A Virginia Corporation<br><br>         Defendants. | CASE NO. 5:25-cv-09736<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1.  Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2.  Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**3.  Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff JAYCE YEH complains of Defendants PROCTORU, INC. dba MEAZURE

LEARNING, INC.; CENTER FOR THE ASSESSMENT OF SIGN LANGUAGE

INTERPRETATION, LLC, a Virginia Limited Liability Company; REGISTRY OF

INTERPRETERS FOR THE DEAF, INC., a Virginia Corporation, and alleges as follows:

1.      **INTRODUCTION:** Defendants discriminated against Plaintiff by forcing him to

wait 30 days to take their sign language exam solely because he uses a service dog. Rather than

respect the ADA that requires they allow service dogs to accompanying him to public places, like

the exam facility, they forced a private room and a 30 day waiting period on him that he did not

request or need. Their decision evidences a intent to discriminate based on their assumptions that

all disabled people need the same accommodations and all disabilities are the same.

2.    Plaintiff has completed American Sign Language (ASL) interpreter training, and his goal is to become a certified ASL interpreter. In June of 2024, Plaintiff began the process of obtaining a National Interpreter Certification. Defendants collectively administer the testing for the National Interpreter Certification. Collectively, and as each other's agents, Defendants refused to allow Plaintiff to take his exams without a 30 day waiting period and having a segregated, isolated room because he uses a service dog.

3.    Defendants' contention that Plaintiff must request an accommodation to allow his service dog into the testing facility and to be provided with a wheelchair accessible testing site is discriminatory. This is particularly true when Defendants require test takers who need accommodations to sign up for an exam 30 days prior to the test date whereas test takers without accommodations only need to sign up two days prior to the exam. If Defendants agree to follow the ADA by providing accessible testing sites (or at least having information on which testing sites are accessible on their websites) and allowing service dogs into the testing facility, then no accommodation is necessary for Plaintiff.

4.    The Defendants' decision to not allow service dogs at its testing facility without isolating the handler in a separate room and require advance notice of presence of the service animal is patently discriminatory and did not afford equal access and enjoyment of its services.  It also contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

    …

- People with disabilities who use service animals cannot be isolated from other

1           patrons, treated less favorably than other patrons, or charged fees that are not

2           charged to other patrons without animals.

3   DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-

4   animals-2010-requirements/.

5         5.      Further, the ADA requires owners and operator of public accommodations to make

6   "reasonable modifications in policies, practices, or procedures" as necessary to provide disabled

7   people with access to services and facilities. 42 U.S.C. § 12182(a)(2)(A)(ii). The Department of

8   Justice (DOJ) has issued regulations stating that, "[g]enerally, a public accommodation shall

9   modify policies, practices, or procedures to permit the use of a service animal by an individual

10   with a disability." 28 C.F.R. § 36.302(c)(1). Permitting a disabled person to use a service animal

11   is *per se* a reasonable modification, and a specific request for entry to a public accommodation

12   with a service dog is not required. 28 CFR § 36.302(c)(1) (2010).

13         6.      Congress explicitly found overprotective, condescending policies discriminatory

14   under the ADA:

15
16        ***individuals with disabilities continually encounter various forms of discrimination***, ***including outright intentional exclusion***, the discriminatory effects of architectural, transportation, and communication barriers, ***overprotective rules and policies***, ***failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation***, ***and relegation to lesser services***, programs, activities, benefits, jobs, or other opportunities;

17
18

19   42 USC § 12101(a)(5) (emphasis added). Defendants' exclusionary and condescending practice

20   and policy of forcing testing accommodations on physically disabled persons is precisely the type

21   of discrimination that the ADA was intended to stop. Further, Defendants have an obligation to

22   provide Plaintiff and others with disabilities services in the "most integrated setting appropriate to

23   the needs of the individual." 28 CFR § 36.203(a). However, "[n]otwithstanding the existence of

24   separate or different programs or activities provided in accordance with this subpart, a public

25   accommodation shall not deny an individual with a disability an opportunity to participate in such

26   programs or activities that are not separate or different." *Id.* at (b). Segregating Plaintiff in a

27   separate room for test taking does *not* provide him with an integrated setting, and moreover

28   denies him the opportunity to take part in the program offered to non-disabled persons without

other accommodations. *Id.* It isolates him and provides him with a different experience than other test takers. In short, Plaintiff did not need separate test-taking accommodations, but they were forced on him all the same in violation of the ADA.

7.     Plaintiff seeks declaratory and injunctive relief to compel Defendants to allow candidates testing for interpreter certifications to be accompanied by their service dogs at testing locations without needing to request an accommodation in advance and without being forced to test in a separate room.  Additionally, Plaintiff seeks declaratory and injunctive relief to compel Defendants to provide wheelchair accessibility at all their testing locations or at least indicate which testing locations are accessible to people who use wheelchairs on their website when a candidate reserves a testing date, so that physically disabled testers do not need to affirmatively request accommodations for access which requires extra notice and delays test taking for disabled certification candidates. Finally, he requests that Defendants do not penalize test takers who are forced to retake the exam and fail it by unfairly extending the wait period for retaking the exam for those who need accommodations.

8.     This discrimination on the basis of disability by Defendants has caused Plaintiff great embarrassment, difficulty and financial hardship including delaying his ability to obtain his certification as an interpreter.

9.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

10.     **VENUE:**  Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is founded on the fact that the denial of access which is the subject of this action occurred in this district and that Plaintiff's causes of action arose in this district.

11.     **PARTIES:**  Plaintiff Jayce Yeh is a "qualified" disabled person who uses the assistance of a service dog to assist him with mobility tasks.  He suffers from Elhers-Danlos Syndrome which is a connective tissue disease which effects his mobility and causes his joints to dislocate easily and postural orthostatic tachycardia syndrome (POTS) which can cause Plaintiff to experience a significant drop in blood pressure or syncope event.  Plaintiff's condition also

1    causes muscle spasms that are so severe at times that he can barely move.  Other times he is in so

2    much pain that he requires the use of a wheelchair for mobility. Plaintiff is substantially limited in

3    his ability to walk, stand, lift, and bend.

4         12.    Plaintiff relies on his service dog, a Labrador Golden Retriever mix named

5    "Emblem" to assist him with certain tasks which he has greater difficulty with or are more painful

6    to do without Emblem's assistance. Emblem is trained to retrieve water or juice from the

7    refrigerator so that Plaintiff can take medication, bring dropped objects, and assist with turning on

8    and off lights. Plaintiff has been working with service dog training organizations for the past six

9    years.  He has experience training service dogs for himself and other disabled persons.  Emblem

10   was professionally trained by Canine Companions with significant assistance from Plaintiff.

11   Plaintiff and Emblem graduated from the Canine Companions service dog training program as a

12   team in February 2023, and they have been working together since then.  Plaintiff and Emblem

13   reinforce their training together daily.  Plaintiff is a qualified person with a disability as defined

14   under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California

15   Government Code § 12926(1).

16        13.    Defendant REGISTRY OF INTERPRETERS FOR THE DEAF, INC., a Virginia

17   Corporation, is the national certifying body of sign language interpreters.

18        14.    Defendant CENTER FOR THE ASSESSMENT OF SIGN LANGUAGE

19   INTERPRETATION, LLC, a Virginia Limited Liability Company, ("CASLI") was created by

20   RID to serve as a separate testing entity charged with the administration, maintenance, and

21   development of exams that RID uses for their certification programs. The principal activity of

22   CASLI shall be the development and administration of knowledge and performance tests that

23   measure the proficiency of an individual to interpret between deaf individuals who use sign

24   language and individuals who speak English. This testing is conducted solely for the purpose of

25   RID certification.

26        15.    Defendant PROCTORU, INC. dba MEAZURE LEARNING, INC. ("Meazure") is

27   a large corporation which provides test development, administration, and delivery solutions for

28   academic and professional credentialing programs. It is a leading provider of online exam

proctoring and in-person test administration solutions as well as software products and services that assist in the creation and delivery of exams. Defendants CASLI and RID contract with Meazure to administer and proctor testing, including the National Interpreter Certification.

16.    The testing facilities for the National Interpreter Certification that are made available by Defendants are places of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

17.    **FACTUAL STATEMENT:**  Plaintiff Jayce Yeh has been working with his service dog Emblem for over two years.  Emblem is a four-year-old lab/golden retriever mix who was trained to be a service dog since birth. Emblem was both professionally trained by Canine Companions and individually trained by Plaintiff to be a service dog.  Plaintiff and Emblem were officially certified as a service dog/handler team in February 2023.  Plaintiff has also trained and continues to train Emblem to serve his specific needs throughout their relationship.  Emblem is specifically trained to assist Plaintiff with certain tasks which can cause dislocations such as picking up objects off of the floor and opening doors. Emblem is also trained to retrieve water or juice from the refrigerator so that Plaintiff can take medication and to switch on and off lights for Plaintiff.

18.    Emblem is a working dog; he is not a pet.  Plaintiff and Emblem have trained extensively together, and they supplement that training daily.  Plaintiff takes Emblem almost everywhere with him in public.  It is important they stay together as much as possible because (a) Emblem provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Emblem goes.

19.    Plaintiff is a disabled individual who uses a service dog assist him with certain tasks related to his disability. He also intermittently uses a wheelchair for mobility. Plaintiff is a recent graduate of Gallaudet University in Washington D.C. His goal is to become an ASL interpreter. In June of 2024, Plaintiff began the process of obtaining a National Interpreter

Certification.

20.    On June 10, 2024, Plaintiff submitted an Exam Request Form to Defendant CASLI indicating that he was pursuing the National Interpreter Certification (NIC). Plaintiff also indicated that he was seeing to register for the Generalist Knowledge Exam (CGKE). On the initial form, Plaintiff also indicated that he was not requesting accommodations for his exam. At this point, Plaintiff had not even considered that being accompanied by a service dog or needing wheelchair access to the testing site would be testing accommodations. No special preparation should have been necessary at the testing site to provide Plaintiff access with his service dog.

21.    On June 17, 2024, Plaintiff received an email from CASLI letting him know that he could register for the examination with Meazure Learning once he received a "Notice to Schedule" email from them. The email also stated that if a candidate was requesting accommodations, they must submit a form to CASLI prior to scheduling the exam and could take up to 30 days for approval. Once again, Plaintiff did not request an accommodation because none should have been necessary for his service dog to accompany him or for him to enter the test location in a wheelchair.

22.    On July 16, 2024, Plaintiff arrived at the Meazure Learning test site operated by SecureNinja in Alexandria, VA, to take the CASLI Ethical Decision-Making & Cultural Responsiveness Case Studies Exam. Plaintiff arrived early to ensure that he had sufficient time to find the accessible entrance and settle in before beginning his exam. Plaintiff parked his vehicle, and then went to the main entrance. He found that the main entrance was only accessible via a stairs, and he could not find an accessible entry. After circling the building and finding no accessible entry, Plaintiff dragged himself and his wheelchair up the stairs while sitting down. This left Plaintiff feeling physically exhausted.

23.    Upon reaching the testing suite, the proctor, Jario Jimenez, denied Plaintiff entry into the testing room. The proctor stated that service dogs were not permitted without prior "accommodation" documentation. Plaintiff explained that a service dog is not an academic accommodation and that under the ADA, Emblem was permitted to accompany him inside the testing room.

24.     The proctor insisted Emblem could distract other examinees and suggested leaving the dog outside; Plaintiff refused to do this as it would be dangerous for both him and Emblem.

25.     After nearly an hour of discussion between Plaintiff and the proctor, including Plaintiff attempting to prove his case by showing the proctor ADA materials on his phone, the proctor reluctantly agreed to allow Plaintiff to take the examination. However, the proctor told Plaintiff that he would have to take the exam in a separate, private room away from other test takers. The "private room" Plaintiff was provided, was a computer-storage room. It was not configured for testing, and it difficult to navigate in a wheelchair. Plaintiff agreed to take his exam in this "private room" because it was clear that the proctor was not going to allow him to sit in the main testing room. Plaintiff thought it would be better to take the exam in less than ideal conditions rather than not taking the exam at all, particularly after all he had suffered to get there.

26.     During the exam, Plaintiff could hear staff of the testing site talking and laughing in their break room from the room he was relegated to. He overheard staff laughing and making comments about him and his service dog, which was humiliating and distracting. The stressful conditions caused Plaintiff to rush through some portions of the exam, and he did not feel that he was able to do his best under the conditions.

27.     After Plaintiff finished with the exam. He left. When leaving the building, another person who worked in the building showed him an accessible path of travel to exit the building. The exit door he had to use was locked from the outside, meaning he could not have used it to enter without assistance.

28.     On July 18, 2024, Plaintiff submitted a CASLI Exam Appeal Form relaying his experiences while taking the examination. He outlined the architectural barriers to access that he experiences, the treatment he experienced due to the presence of his service dog, and the ultimate solution of being segregated from other test takers in a makeshift private room that was noisy. CASLI confirmed receipt of Plaintiff's appeal.

29.     On August 26, 2024, Plaintiff received an email from Sean Furman, CASLI Director of Testing, confirming receipt of Plaintiff's appeal. Mr. Furman also informed Plaintiff

that CASLI anticipated providing him with a substantive response to his appeal in mid-September.

30.    On October 18, 2024, Plaintiff followed up with CASLI regarding the status of his appeal.

31.    On November 25, 2024, Plaintiff received a decision from CASLI regarding his appeal. Although CASLI apologized for Plaintiff's difficult testing experience, it ultimately blamed Meazure Learning for the discrimination that Plaintiff experienced. Mr. Furman of CASLI wrote, "During our investigation into the incident, Meazure Learning relayed to us that they would need to be notified of all accommodations ahead of time - including the use of a service animal. This is a policy that Meazure Learning supposedly has in place that we need to work with." His email continued, "for future examinations you might need to take and to ensure positive testing experience, we ask you to communicate with us of any accommodations including service animals so we can communicate this with the testing site. Our goal is to remove any potential barriers and challenges the testing site may have in terms of accessibility to the facility and policies they may have in place." CASLI informed Plaintiff that he had passed one portion of the exam, so he would only need to retake the portion he did not pass. CASLI issued him "free retake" for this portion of the exam.

32.    Although CASLI was apologetic and allowed Plaintiff to retake the exam for free, it did not address the underlying discriminatory issues that Plaintiff experienced. Plaintiff's access to his service dog during a test is not an academic accommodation. It is a *per se* accommodation under the ADA that must be automatically granted at the testing location when Plaintiff arrives. He does not need a separate room or any other special accommodation to be accompanied by his service dog. Plaintiff and Ember would simply arrive at the testing location together. Plaintiff would sit at his assigned desk. Ember would lie down beside him. Plaintiff would take the test, and then they would leave. No testing accommodation like a separate room or a 30 day delay to obtain it is necessary. Further, having to affirmatively request a wheelchair accessible testing location as an accommodation is just as ridiculous. Defendants are or should be aware that a certain percentage of their testing candidates will be physically disabled. Defendants must either

9

provide all their testing at accessible locations or denote on their website which testing locations are accessible to physically disabled test takers. Being able to physically enter the testing center is not an academic accommodation. It is a requirement of the ADA for any public accommodation. Having to notify Defendants 30 days in advance to request a physically accessible space is unfair and puts the disabled test taker at a disadvantage of not being able to sign up for an exam just a few days before like non-disabled test takers.

33.    On March 17, 2025, Plaintiff responded to CASLI in an effort to explain why Meazure Learning's service dog policy is discriminatory. Plaintiff wrote,

> While Meazure Learning is able to have a general policy for advanced notification for testing / academic accommodations this is not the case for the use of service dogs. Service dogs are not considered a form of testing accommodation nor academic accommodations. You may want to consider viewing service dogs akin to personal medical devices. Meazure Learning's policy removes equal access by requiring advanced notification from a service dog user as a condition to gain equal access to testing or a testing site. CASLI and Meazure Learning (including their test sites) are both Title III entities under the ADA. Denial of a service dog team access based on Meazure Learning's advanced notification policy for service dog users is an ADA violation which is why I would encourage CASLI not to adopt, follow, or support this approach. Instead, I encourage both Meazure Learning and CASLI to adopt a policy that is ADA compliant and consistently provides a baseline of training on this topic to anyone working for or representing Meazure Learning and/ or CASLI. Most importantly, as a direct result of this situation, both CASLI and Meazure Learning have become aware that I'm a service dog user. I will be continuing to utilize my service dog whenever I test through CASLI and Meazure Learning. Please continue to advise both CASLI and Meazure Learning of this so that the issue of "advanced notice" for service dog users can be effectively and permanently resolved.

34.    On March 17, 2025, Plaintiff also submitted an exam request form to CASLI for the Case Studies portion of the National Interpreter Certification exam. Although he disagreed with the necessity of it, Plaintiff also indicated that he would be requesting an accommodation to have his service dog accompany him to his examination. On March 17, 2025, Plaintiff also complete the accommodations request form required by Defendants.

35.    On March 18, 2025, Plaintiff received an email from Melissa Kononenky, CASLI Testing Specialist requesting that he complete an accommodations request form. She indicated that CASLI would reach out to regarding "next steps along with adding the exam(s) to your account." Plaintiff was unable to sign up for the exam until these steps had been completed and his "accommodation" had been approved.

36.     On March 21, 2025, Mr. Furman responded to Plaintiff on behalf of CASLI indicating that a note had been made on the system that he would be accompanied by his service dogs during future examinations to "ensure there will be no issues." Mr. Furman also encouraged Plaintiff to use a CASLI run testing site for his future exam rather than a site run by Meazure Learning. However, when Plaintiff looked at the CASLI run testing sites the closest one was much farther from his home than the nearest Meazure Learning site.

37.     On May 11, 2025, Plaintiff still had not received permission to take the examination, so he wrote to Ms. Kononenko to let her know that he had submitted his accommodation request form on March 17, 2025. He also asked for her assistance in moving the process forward so that he could sign up for the examination.

38.     On May 12, 2025, Mr. Furman emailed Plaintiff and copied another CASLI employee Annie Smith Santiago who oversees accommodation requests. On May 15, 2025, Ms. Kononenko emailed Plaintiff. She informed him that there is currently a pending accommodation request on his account. She also stated that exams cannot be added to his account until a determination has been made on his accommodation request. Ms. Kononenko also indicated that CASLI may need up to 30 days to make a determination on his accommodation request.

39.     Plaintiff was surprised and upset by this response because he had submitted his accommodation request on March 17, 2025, well over 30 days ago, and Mr. Furman had already assured him that his use of a service dog as an accommodation was already noted in his file. There should have been no further delay in his ability to sign up for the exam. On May 15, 2025, Plaintiff wrote to Ms. Smith Santiago and Ms. Kononenko requesting that they clarify when he would be allowed to sign up for the exam.

40.     On May 19, 2025, Ms. Smith Santiago informed Plaintiff that the exam had been added to his account, and he could now sign up for the examination. She also asked Plaintiff to let her know if he was planning to test at one of CASLI's testing sites so that she could "confirm the site is accessible." On May 19, 2025, Plaintiff also received his permission to purchase his exam from CASLI and notification that he could register for the examination with Meazure Learning once he received a "Notice to Schedule" email form Meazure Learning.

41.     On June 5, 2025, Plaintiff submitted his CASLI Exams Candidate Agreement Form. On June 6, 2025, Plaintiff purchased his examination with his retake credit.

42.     On July 22, 2025, Plaintiff Notice to Schedule Examination from Meazure Learning indicating that he could now sign up for the examination. The notice also included statements that a testing candidate must sign up for a test at least two days in advance, but that if you were approved for accommodations, you must sign up for the exam at least 30 days prior to the examination date. Again, Plaintiff did not believe this would apply to him since being accompanied by his service dog was not an academic accommodation and did not need advance notice.

43.     On July 22, 2025, Plaintiff signed up to take his examination at a Meazure Learning testing site on the campus of San Jose State University on July 25, 2025. On July 22, 2025, Plaintiff received an email from Jess Joyner, Testing Coordinator for Meazure Learning. They indicated that Plaintiff could not take his examination at San Jose State University on July 25, 2025, because the "site does not have their private room available that date to accommodate." Meazure Learning asked Plaintiff to provide them with "3 dates you are available to test at minimum 2 weeks or greater out from now, we ask for 30 days in advance…" so that they could check availability for the private room.

44.     Plaintiff immediately emailed Meazure Learning back stating that he did not request a private room and asking them to clarify why his test had to be postponed two to four weeks. Meazure Learning responded that when CASLI had approved his accommodation to be accompanied by his service dog, "they included a private room testing accommodation to ensure testing sites can accommodate the service animal." However, Plaintiff does not need nor did he request a private room. His preference is to take his exam with the other test takers. He does not need a private room to be accompanied by his service dog during the exam.

45.     On July 22, 2025, Plaintiff emailed Meazure Learning again. He wrote, "I'm respectfully asking that you do not force an accommodation that was not requested by me. Again, I did not request a private room for this test." He also provided three dates that he could take the exam in August.

12

46.     On August 5, 2025, Meazure Learning informed Plaintiff that it had "formally confirmed the accommodations for testing" with CASLI to ensure that the site would be accessible and that he could be accompanied by his service dog would be accommodated in the main testing room.

47.     On August 8, 2025, Plaintiff took his exam at San Jose State University. There was no difficulty with access. Emblem rested quietly under the table for the entire exam. There were about seven other test-takers in the testing room. None of them appeared bothered by Emblem's presence.

48.     Plaintiff passed the exam, and he is now starting to plan for the next step in his certification which is completion of the NIC Performance Exam. On September 1, 2025, Plaintiff submitted his Exam Request Form to take this examination. On September 12, 2025, Plaintiff received an email from CASLI informing him that he was eligible to purchase the exam and that he must purchase the exam within 30 days. Also, on September 12, 2025, Plaintiff received a follow-up email from CASLI informing him that when he signed up for the examination, he needed to inform the testing site of his "need for wheelchair access and a service dog." Plaintiff should not need to continuously request these "accommodations" which are not even accommodations at all but are things that should be readily available at all testing sites to all disabled test takers.

49.     On October 17, 2025, Plaintiff's attorney wrote to CASLI to on Plaintiff's behalf:

Ms. Kononenko:

I am Mr. Yeh's attorney. I represent him on potential claims against your organization for failure to allow him access to testing facilities and testing dates within 48 hours of being eligible to take exams as non-disabled persons can do, solely because he uses a service dog for his disability.  Part of the issue here is that your organization and its agent testing companies force testing accommodations on disabled people like Mr. Yeh when they are not required or asked for.  This results in what appears to be a blanket 30 day waiting period for anyone with a disability who requests testing accommodations. Specifically in this case, Mr. Yeh in his two past exams was forced to wait 30 days to test because his use of a service dog, and his service dog was ignorantly and erroneously flagged as a "testing accommodation" that triggered the 30-day blanket waiting period for people with disabilities who request testing accommodations.

I am writing to you because I do not want to see the same mistake made here again.  Mr. Yeh wants to take the exam referenced below *without* testing

accommodations to avoid delay, and to be tested on the merits, not perceptions about his use of a wheelchair or service dog. He also does not want the imposition of an arbitrary 30-day waiting period for accommodations he is not requesting.

We request that 1) you remove any testing accommodations from his profile for the purposes of this exam. 2) Please forward this communication to your institution's attorney.

Thank you for working with us to ensure Mr. Yeh can take the exam like anyone else, regardless of his disabilities.

50.     On October 23, 2025, CASLI responded that it would investigate the issue. As of the date of this filing, no one from CASLI responded to Plaintiff's counsel's email. Having heard nothing, this lawsuit followed.

51.     Plaintiff is deterred from sitting for further examinations until Defendants adopt proper policies regarding service dogs and train their employees on those policies.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 U.S.C. §§ 12101 *et seq.*)**

52.     Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 51, above, and incorporates them here by reference as if separately repled hereafter.

53.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

54.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

55.     Title III specifies that unlawful discrimination includes, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

56.     Title III further requires "any person that offers examination or courses related to applications, licensing, certification, or credentialing, for secondary or post-secondary education, professional, or trade purposes" to "offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189.

57.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

58.     The testing facilities is a public accommodation under Title III of the ADA.  42 U.S.C. § 12181(7).

59.     Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

60.     The Department of Justice (DOJ) has issued regulations stating that, "[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a

service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). Permitting a disabled person to use a service animal is *per se* a reasonable modification, and a specific request for entry to a public accommodation with a service dog is not required. 28 CFR § 36.302(c)(1) (2010). Defendants have a policy and practice of requiring disabled test takers who use service dogs to make an affirmative accommodation request in advance of the examination and forcing the disabled test taker and the service dog to be segregated in a private room during the examination.

61.    The Defendants' decision to not allow service dogs at its testing facility without isolating the handler in a separate room and advance notice of presence of the service animal is patently discriminatory and did not afford equal access and enjoyment of its services.  It also contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

    …

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

62.    On information and belief, as of the date of Plaintiff's most recent test on August 8, 2025 Defendants continue to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendants' premises, in violation of the ADA.

63.     In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

64.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title. 42 U.S.C. § 12181(7)(B).

65.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

The acts and omissions of Defendants set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

66.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs and use wheelchairs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

67.     Defendants' actions continue to deny Plaintiff's right to full and equal access by deterring Plaintiff from further testing towards his certification and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

68.     Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative

methods, to the extent required by this title.

69.     Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to take an examination, in light of Defendants' policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

**SECOND CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A**
**PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

70.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 69 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

71.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

72.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

73.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

19

74.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

75.     Defendants' testing sites are public accommodations within the meaning of the CDPA. On information and belief, Defendants are the owner, operator, lessor or lessee of the public accommodation.

76.     Defendants made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its place of business with his service dog or force Plaintiff to be segregated from other test takers due to the presence of his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being discriminated against when entering this public accommodation and place of business based on Defendants' illegal prohibition of his legally protected use of his service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he seek to return to these facilities. Plaintiff cannot sign up for the next examination towards his National Interpreter Certificate until Defendants change their policies surrounding service dogs and he receives the protection of this Court's injunctive relief. He he has continues to suffer discrimination all to is statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

77.     **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendants as complained of here which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class

citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the assistance of a service animal.

78.     Plaintiff wishes to take his next examination towards his National Interpreter Certification, but is deterred from returning to use Defendants' testing facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to Defendants' testing facilities and is deterred from signing up for his next examination until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

79.     The acts of Defendants has proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendants' inaccessible policies. As to Defendants that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

80.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply immediately with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as prayed below for.

81.     **DAMAGES:**  Because of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has

21

suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as stated below.  Defendants' actions and omissions to act constitute discrimination against Plaintiff because he was and is disabled and unable, because of the policy barriers created and/or maintained by Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to sit for his next examination and will continue to cause him damages each day these barriers to access and policy barriers are still present.

82.     Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendants' behavior was intentional. Defendants were aware and/or were made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed.  Defendants' establishment of their discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

83.     **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

84.     Plaintiff suffered damages as above described as a result of Defendants' violations. Damages are ongoing based on his deterrence from returning to Defendants' testing sites.

WHEREFORE, Plaintiff prays for relief as stated below.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**THIRD CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL**
**CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES**
**ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

85.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 84 of this Complaint and incorporates them herein as if separately re-pleaded.

86.     At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

87.     California Civil Code section 52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

88.     Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

89.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

90.     The actions and omissions of Defendants as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52.  As a proximate result of Defendants' action and

23

1   omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51

2   and 52, and is responsible for statutory and compensatory damages to Plaintiff, according to

3   proof.

4        91.    **FEES AND COSTS:**  As a result of Defendants' acts, omissions and conduct,

5   Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by

6   statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled

7   persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks

8   recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code

9   sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make

10  its facilities and policies accessible to all disabled members of the public, justifying "public

11  interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure

12  section 1021.5 and other applicable law.

13       92.    Plaintiff suffered damages as above-described as a result of Defendants'

14  violations.

15       WHEREFORE, Plaintiff prays for relief as stated below.

16  <u>**PRAYER**</u>

17       Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this

18  Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury because of the

19  unlawful acts, omissions, policies, and practices of Defendants as alleged herein, unless Plaintiff

20  is granted the relief he requests.  Plaintiff and Defendants have an actual controversy and

21  opposing legal positions on Defendants' violations of the laws of the United States and the State

22  of California. The need for relief is critical because the rights at issue are paramount under the

23  laws of the United States and the State of California.

24       WHEREFORE, Plaintiff Jayce Yeh prays for judgment and the following specific relief

25  against Defendant:

26       1.    An order enjoining Defendants, their agents, officials, employees, and all persons

27  acting in concert with them:

28            a.  From continuing the unlawful acts, conditions, and practices described in this

1    Complaint;

2    b.    To modify its policies and practices to accommodate service dog users in

3    conformity with federal and state law, including allowing a test taker with a

4    service dog to register, attend and take exams at test taking sites open to the public

5    on the same timetable as non-disabled persons do. .

6    c.    To modify its policies and practices to prevent Defendants from adding additional

7    time to be required between exams for disabled persons regardless of whether they

8    require accommodations when compared with non-disabled test takers who do not

9    require or request testing accommodations;

10    d.    To modify their website to indicate which testing locations are wheelchair

11    accessible so that disabled test takers sign up for accessible testing locations;

12    e.    That the Court issue preliminary and permanent injunction directing Defendants as

13    current owner, operator, lessor, and/or lessee and/or its agents of the subject

14    premises to modify the above described policies and related policies and practices

15    to provide full and equal access to all persons, including persons with disabilities;

16    and issue a preliminary and permanent injunction under ADA section 12188(a)

17    and state law directing Defendant to provide facilities usable by Plaintiff and

18    similarly situated persons with disabilities, and which provide full and equal

19    access, as required by law, and to maintain such accessible facilities once they are

20    provided and to train Defendants' employees and agents in how to recognize

21    disabled persons and accommodate their rights and needs;

22    f.    An order retaining jurisdiction of this case until Defendants has fully complied

23    with the orders of this Court, and there is a reasonable assurance that Defendants

24    will continue to comply in the future absent continuing jurisdiction;

25    2.    An award to Plaintiff of statutory, actual, general, treble, and punitive damages in

26    amounts within the jurisdiction of the Court, all according to proof;

27    3.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California

28    Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise

25

permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4.      An award of prejudgment interest under Civil Code § 3291;

5.      Interest on monetary awards as permitted by law; and

6.      Grant any other relief that this Court may deem just and proper.

Date: November 12, 2025                      CLEFTON DISABILITY LAW


                                             ___/s/ Aaron M. Clefton___
                                             By AARON M. CLEFTON, Esq.
                                             Attorneys for Plaintiff
                                             JAYCE YEH


## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: November 12, 2025                      CLEFTON DISABILITY LAW


                                             ___/s/ Aaron M. Clefton___
                                             By AARON M. CLEFTON, Esq.
                                             Attorneys for Plaintiff
                                             JAYCE YEH

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES